IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGIA FRANKTON                          *
                                          *
              v.                          *    Case No.: 1:08-cv-2209
                                          *
METROPOLITAN LIFE INSURANCE                *
COMPANY                                   *
                                       *****

MEMORANDUM

On August 29, 2008, Plaintiff Georgia Frankton ("Plaintiff") filed suit under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,*

challenging the termination of her long term disability benefits by Defendants Metropolitan Life

Insurance Company ("MetLife").  Now pending before the Court are the Defendants' Motion for

Summary Judgment as to Plaintiff's Claim, and Plaintiff's Cross Motion for Summary Judgment.

For the reasons that follow, I will grant the Defendants' Motion and deny Plaintiff's Cross

Motion.


I.        Factual Background[1]


Plaintiff began her employment with Baltimore Gas & Electric Company, now a

subsidiary of Constellation Energy Group ("Constellation"), in October of 1976.  (Mem. Supp.

Defs.' Mot. Summ. J. ("Defs.' Mem.") 2.)  Plaintiff, a financial reconciler with Constellation,

participated in the Constellation Energy Group Long Term Disability Plan ("the Plan").  (*Id.* at

1.)  The Plan is an employee welfare benefit plan governed by ERISA.  MetLife is the designated

---

[1] The facts are presented in the light most favorable to the Plaintiff, the non-moving party. *See Lee v. York County
Sch. Div.*, 484 F.3d 687, 693 (4th Cir. 2007).

claims administrator and has discretion and authority to make initial and final determinations under the Plan.

Constellation's written job description for Plaintiff's position states that a financial reconciler:

> Processes, reviews, reconciles and enters data into the Oracle applications in accordance with departmental standards and procedures under unit supervision. Requires independent judgment in interpretation of data and knowledge of related work performed in the same and/or other departments. Duties may include maintaining records, handling processing and verifying invoices and customer payments, preparing various forms and verifying information from various sources. Resolves inquiries from supervision, employees, vendors and customers regarding invoice related data.

(Defs.' Mem., Ex. A at 962.)  Constellation's formal job description for Plaintiff does not indicate that a financial reconciler is required to perform any physical activity.  However, a supplement to the formal description, included in the administrative record, indicates that certain physical tasks are required once every two to three weeks.  (*Id*. at 260-61.)  These tasks include standing for 1 ½ to 1 ¾ hours, bending over, and lifting trays weighing ten to fifteen pounds, as well as pushing and pulling carts for check distribution once every two to three weeks. (*Id.* at 261.)

After twenty six years of continuous employment, Plaintiff ceased her active employment with Constellation on November 11, 2002.  (*Id*. at 961.)  Shortly thereafter, through her employer, she filed a claim for long-term disability ("LTD") benefits with MetLife.  Her claim was supported by multiple medical diagnoses from her treating physician, Dr. Nelson Hendler, including Thoracic Outlet Syndrome, Cervical Radiculopathy, and Cervical and Lumbar Facet Syndrome.  (*Id.* at 137.)  Dr. Hendler's Attending Physician Statement indicated that Plaintiff was able to sit for four hours intermittently, stand for three hours intermittently, walk six hours

2

intermittently, and lift twenty pounds occasionally.  (*Id.* at 285.)  Dr. Hendler concluded that until Plaintiff underwent two surgical procedures, Anterior Cervical Fusion and Thoracic Outlet Surgery, she would not be able to return to work at her position with Constellation.  (*Id.*)

On April 23, 2003, MetLife informed Plaintiff that it had denied her claim for disability benefits.  (*Id.* at 283-85.)  MetLife disagreed with Dr. Hendler's conclusions, stating that the "diagnostic testing of the cervical spine shows minimally abnormal findings without evidence of nerve root or spinal cord compression."  (*Id.* at 285.)  Furthermore, MetLife concluded that the physical limitations, diagnosed by Dr. Hendler, fell within the requirements of Plaintiff's job as a financial reconciler with Constellation.  (*Id.*)  Plaintiff appealed MetLife's denial, and on April 29, 2004 MetLife approved her claim for LTD benefits effective June 1, 2003.

Plaintiff has maintained that as a result of her condition, she suffers from severe, debilitating physical pain concentrated on the right side of her body.  (*Id.* at 559.)  She states that the condition affects all functional abilities, including "hearing, voice/vocal cord impairment. . . walking, standing, lifting."  (*Id.*)  From January 23, 2003 to July 23, 2003 she underwent three surgical procedures: two provocative discographies and one anterior cervical discectomy and fusion.  (*Id.* at 558.)  According to Plaintiff, these procedures did little to stem her symptoms. Since the surgical procedures, Plaintiff's course of treatment has included a regular course of trigger injections every two weeks, as well as a prescription for Demerol to be taken once every four hours.  By letter dated October 10, 2005, Plaintiff indicated to MetLife that her condition was continuing to deteriorate.  (*Id*. at 556.)

Six months after granting Plaintiff's appeal, MetLife requested additional documentation from Plaintiff to evaluate whether she continued to qualify for benefits.  (*Id.* at 681.)  Under the

3

Plan, the definition of disability narrows after twenty four months of benefit payments.  On June

1, 2005, Plaintiff would have been in receipt of disability benefits for twenty four months.  (*Id.*)

The relevant language of the plan is as follows:

> Disability or Disabled means that, due to an Injury or Sickness, you require the regular
> care and attendance of a Doctor and:
> 1. you are unable to perform each of the material duties of your regular job, as
>    set forth in the Employee's job description that is maintained by the
>    Employer; and
> 2. after the first 24 months of Monthly Benefit payments, you must also be
>    unable to perform each of the material duties of any occupation for which you
>    are reasonably or may reasonably become qualified taking into consideration
>    your prior training or training available through a rehabilitation program
>    offered to you and approved by us, your education, your experience and your
>    past earnings.

(*Id.* at 1037-38.)  Thus, after twenty four months of benefit payments, determination of whether a

claimant is disabled shifts from an evaluation of the claimant's "regular job" to an evaluation of

"any occupation."  (*Id.* at 1038.)  MetLife requested that Plaintiff provide it with pharmacy

records, medical records, and an additional Attending Physician Statement that focused on her

functional capabilities.  MetLife reviewed the additional documentation provided by Plaintiff and

concluded that she should undergo an independent medical examination.  (*Id.* at 25.)

On March 14, 2005, Dr. John Parkerson, an independent board-certified occupational

medicine specialist, examined Plaintiff.  Based on his examination, Dr. Parkerson concluded that

Plaintiff "could return to work at her regular job without any specific restrictions.  The

restrictions provided by the attending physician are not fully supported by the physical

examination." (*Id.* at 625.)  Dr. Parkerson elaborated, stating "[s]he is not temporarily totally

disabled on a physical basis.  Her limitations are [sic] either have a primary psychiatric basis . . .

or possibly a consciously self limiting condition."  (*Id.*)  However, Dr. Parkerson did not give her

a clean bill of health; he diagnosed her with status post instrumented cervical fusion C4-6, possible vascular thoracic outlet syndrome, lumbar degenerative disc disease and depressive disorder vs. somatoform disorder.  (*Id.* at 624.)  Dr. Parkerson found that Plaintiff had "some limitation of neck rotation," but ultimately found that her "objective examination" was "not consistent with her reported functional status."  (*Id.* at 625.)

MetLife forwarded a copy of the independent medical examination report to Dr. Hendler on March 28, 2005 for his review and comment.  (*Id.* at 36.)  MetLife requested that Dr. Hendler indicate if he had any disagreement with Dr. Parkerson's findings and to provide MetLife with any objective evidence supporting such disagreement.  (*Id.* at 37.)  Dr. Hendler only responded to MetLife's request for comment after it had terminated Plaintiff's benefits.  By letter dated May 4, 2005, Dr. Hendler indicated that he and Dr. Parkerson are in agreement regarding Plaintiff's medical diagnosis, and that the primary disagreement arises over whether the diagnosis precludes her from returning to work.  (*Id.* at 571.)

MetLife also conducted video surveillance of Plaintiff on the day of her independent medical examination and on the two days following the examination.  (*Id*. at 605.)  On March 14, 2005, a private investigator observed Plaintiff walking with a normal gait, and bending from the waste several times.  (*Id.*)  The private investigator further observed Plaintiff carrying clothes to a dry cleaner, and transferring grocery bags from her shopping cart to the trunk of her car.  (*Id.*)  Plaintiff contends that she was in pain during these errands.  (*Id.* at 555.)  On March 15, 2005, the investigator did not observe Plaintiff leave her home.  (*Id.* at 605.)   Plaintiff contends that she spent the day and a half after her medical examination confined to her bed due to pain and exhaustion from the observed activities.  (*Id.* at 555.)  On March 16, 2005, the investigator

observed Plaintiff walk from her home to her car with no apparent symptoms of pain.  (*Id*. at

605.)

On March 7, 2003, Plaintiff filed an application for disability insurance with the Social

Security Administration ("SSA").  (Mem. Supp. Pl.'s Cross Mot. Summ. J. ("Pl.'s Mem.") Ex. A

at 3.)  The claim was denied initially and on reconsideration.  (*Id*.)  On March 22, 2005,

following a hearing at which Plaintiff and a vocational expert testified, the SSA concluded that

Plaintiff was entitled to Disability Insurance Benefits pursuant to Section 216(i) of the Social

Security Act.  (*Id*. at 5-6.)  Specifically, the Administrative Law Judge concluded that "the

claimant's assertions concerning her ability to work are credible . . . the claimant is unable to

perform the requirements of her past relevant work . . . the claimant's residual functional

capacity does not enable her to do sustained work activities in an ordinary work setting on a

regular and continuing basis."  (*Id*.)

On April 19, 2005 MetLife determined that Plaintiff was no longer disabled within the

meaning of the Plan's "regular job" definition of disability, nor within the "any occupation"

definition of disability.  (*Id*. at 614-17.)  MetLife sent a letter to Plaintiff dated April 19, 2005

delineating the basis of its determination:

> Employer statement and Job Description provided February 19, 2003;
> Employee Statement by [Plaintiff] dated March 6, 2003;
> Personal Health Profile Update provided by [Plaintiff] in January 2005;
> Attending Physician's Statement Completed by Nelson Hendler, M.D. on January 6, 2005;
> Medical records of Nelson Hendler, M.D. from June 2, 2004 through February 4, 2005;
> Independent Medical Examination performed on March 14, 2005;
> Surveillance of [Plaintiff's] activities performed from March 14, 2005 through March 16, 2005."

(*Id.* at 614-15.)  The letter explained that MetLife had concluded that the independent medical examination was inconsistent with Plaintiff's self described physical limitations.  The letter further indicated that Dr. Hendler had not responded to the independent medical examiners report.  MetLife then advised that Plaintiff's long term disability benefits were terminated as of April 19, 2005.  Plaintiff appealed.

On October 10, 2005, MetLife submitted Plaintiff's appeal of its April 2005 administrative determination to Dr. Dennis Gordon, an Independent Physician Consultant. MetLife submitted Plaintiff's claim file (including additional documentation provided by Dr. Hendler after the April 2005 administrative decision) for review.  (Defs.' Mem. at 9-10); *see also* (Defs.' Mem., Ex. A at 529-43) (Dr. Gordon's complete report).  On October 21, 2005, after submitting the claim file to Dr. Gordon, MetLife received additional records from Dr. Hendler. (Defs.' Mem., Ex. A at 544.)  MetLife determined that the documents were largely duplicative and decided not to forward them to Dr. Gordon for consideration. (Reply Supp. Defs.' Mot. Summ. J. ("Defs.' Reply") at 6.)  These documents included Plaintiff's most recent "office note" (which MetLife had not received) and a "medical profile" prepared by Plaintiff (which was already part of the record).  (Defs.' Mem., Ex. A at 544.)  After review of the claim file, Dr. Gordon concluded that there was no physiological basis for many of Plaintiff's complaints stating, "there is nothing in the file that is incompatible with sedentary work." (*Id.* at 531.)

After receiving Dr. Gordon's report, MetLife indicates that it "reviewed all of the records in the claim file, including all of the medical records, the [independent medical examiner's] report, the investigator's records, the Social Security Awards, the records submitted on appeal, and the [independent physician's] report" and determined that the records did not support

Plaintiff's claim.  (Defs.' Mem. at 11.)  In a letter dated November 10, 2005, MetLife informed

Plaintiff that "the original decision to terminate benefits beyond April 18, 2005 was upheld upon

appeal."  (Defs.' Mem., Ex. A at 525.)


## II.     Standard of Review


A motion for summary judgment should be granted when the record establishes that there

is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of

law.  Fed.R.Civ.P. 56(c).   The substantive law of the cause of action determines which facts are

material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material

fact is genuine and summary judgment is inappropriate "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Id.*  In analyzing whether a genuine issue

of material fact exists, the evidence and reasonable inferences from that evidence must be

viewed in the light most favorable to the nonmoving party.  *Id.* at 255.

The MetLife Plan is governed by ERISA.  *See* 29 U.S.C. § 1003.  Under section

502(a)(1)(B) of ERISA, a "civil action may be brought by a participant or beneficiary to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan

or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

To determine the appropriate standard of review under ERISA, a Court reviewing a plan

administrator's decision to deny benefits, must determine whether the plan gives the

administrator the discretion to construe uncertain terms and determine eligibility for benefits.

*See Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 340-41 (4th Cir. 2000); *Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan does not grant discretionary

authority, the court reviews the employee's claim de novo, looking to the plan's terms and other

manifestations of the parties' intent.  *Booth*, 201 F. 3d at 341.  If, on the other hand, the plan

confers discretion on the administrator, the court reviews the administrator's decision for abuse

of discretion.  *See id*. at 341-42.

 In the instant case, the MetLife Plan gives its administrator discretion to construe the

terms of the plan.  A plan's intention to confer discretionary authority must be clear and

unambiguous.  *See Gallagher v. Reliance Standard Life Ins. Co*., 305 F.3d 264, 268-69 (4th Cir.

2002).  The MetLife Plan provides that the administrator will pay "the accrued benefits monthly

at the end of the period for which they are due . . . if the written proof of a claim . . . has been

made on time; and is *satisfactory to us*."  (Defs.' Mem., Ex. A at 1054.)  In *Bartel v. Sun Life*, the

Court concluded that plan language requiring that "[p]roof [of disability] must be satisfactory to

Sun Life" was sufficient to confer discretionary authority.  536 F. Supp. 2d 623, 628 (D. Md.

2008); s*ee also Champion v. Black & Decker*, 550 F.3d 353, 357-59 (4th Cir. 2008) (reaching the

same conclusion after review of similar language); *Nance v. Sun Life Assur. Co. of Canada*, 294

F.3d 1263, 1267-68 (10th Cir. 2002) (same); *Brigham v. Sun Life of Canada*, 317 F.3d 72, 81

(1st Cir. 2003) (noting that circuits that have considered the "to us" language after "satisfactory"

have concluded that it is an indicator of subjective, discretionary authority on the part of the

administrator, distinguishing such language from policies that require "satisfactory proof"

without specifying who must be satisfied).  The language in the MetLife plan is sufficient to confer discretionary authority on the plan administrator.[2]

Under an abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable, even if the court "would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir.2008); *see also Booth*, 201 F.3d at 341; *Firestone*, 489 U.S. at 111.  An administrator's decision will be reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  *Evans*, 514 F.3d at 322 (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995)).  Ultimately, a plan administrator must adhere to the text of ERISA and the plan to which they have contracted, must base their decision on good evidence and sound reasoning, and reach their conclusion after a fair and searching process.[3]  *See Evans*, 514 F.3d at 322-23.

### III.    Long Term Disability Benefits Decision

---

[2] The parties do not dispute that abuse of discretion is the appropriate standard of review.  *See* (Def. Mem. at 12-14); (Pl.'s Mem. at 8).

[3] The Fourth Circuit has set forth a nonexclusive list of factors a court may consider when determining whether an exercise of discretion is reasonable: "[A] court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have."  *Booth*, 201 F.3d at 342-43.

Plaintiff contends that MetLife abused its discretion in determining that she could perform sedentary work.  However, contrary to Plaintiff's arguments, her claim was subjected to a full and fair reasoning process.

MetLife collected medical reports from Plaintiff's numerous health care providers.  The record includes reports from her treating physician, Dr. Hendler, dating back to 2002, and records from prior treating physicians dating from December 21, 1999.  Some of these medical records indicate disagreement among examining physicians regarding the cause and extent of Plaintiff's disability.  For example, Dr. Michael S. Kaplan concluded on January 17, 2003 that Plaintiff's plethora of symptoms "do not fit either anatomical or clinical descriptions." (Defs.' Mem. at 944-45.)

MetLife sought independent evaluations of Plaintiff's medical records and physical condition.  MetLife ordered an Independent Medical Examination, performed by Dr. John Parkerson, on March 14, 2005.  Dr. Parkerson reviewed more than five years worth of medical records including MRI and CT scans, electrodiagnostic studies, as well as evaluations from Dr. Hendler prepared as recently as March 8, 2005.  (*Id.* at 620-23.)  Dr. Parkerson conducted a physical examination which in his opinion was "remarkably normal." (*Id.* at 624.)  After Plaintiff appealed the decision to terminate her LTD benefits, MetLife forwarded the claim to an Independent Physician Consultant, Dr. Dennis S. Gordon, for review.

The independent medical evaluators reached reasoned and principled conclusions.  Both Dr. Parkerson and Gordon considered the relevant evidence in the claim file and justified their conclusions in light of contrary evidence favorable to Plaintiff's claim.  Indeed, Dr. Parkerson concurred with Dr. Hendler's physical diagnosis stating that "even with her cervical fusion,

possible TOS, and lumbar degenerative disc disease, she could return to work in some capacity

and is able to resume her regular job." (*Id.* at 625.)  When Dr. Gordon reviewed the entire claim

file he addressed Dr. Hendler's disagreements with Dr. Parkerson's conclusions, and Dr.

Hendler's Mensana Clinic Pain Validity Test which Dr. Hendler had used in diagnosing Plaintiff.

(*Id.* at 571-602.)  Specifically, Dr. Gordon concluded that Dr. Hendler's Pain Validity Test was

not a reliable or generally used diagnostic tool (*Id*. at 542-43.)

      MetLife also considered non-medical evidence when reaching its decision.  MetLife

relied on surveillance video of Plaintiff conducted on the day of the independent medical exam.

(*Id.* at 605.)  Two descriptions of Plaintiff's employment are included in the record as well,

outlining both the sedentary and periodic physical requirements of her job.  (*Id*. at 261.)  Finally,

Dr. Parkerson, Dr. Gordon, and the Plan Administrator all reviewed documents prepared by

Plaintiff detailing her symptoms.  (*Id.* at 614-15.)

      MetLife's decision was not only the result of a principled decision making process, but

its decision that Plaintiff was able to return to work was supported by substantial evidence.  In

reaching its conclusion, MetLife relied on the opinions of an Independent Medical Examiner, an

Independent Physician Consultant, and video surveillance conducted over three days.  Dr.

Parkerson, the Independent Medical Examiner reviewed, Plaintiff's entire medical history and

conducted a physical examination.  Dr. Parkerson tested her range of motion, strength of her

upper and lower extremities, and evaluated the health of her spine.  (*Id.* at 623-24.)  Ultimately,

Dr. Parkerson found that Plaintiff was not "temporarily totally disabled on a physical basis." (*Id.*

at 625.)  Dr. Gordon, the Independent Physician Consultant, reviewed Plaintiff's claim file,

which included five years of her medical history and the evaluations of eleven different treating

physicians.  (*Id.* at 532.)  After reviewing the file, Dr. Gordon concluded that "there is nothing in

the file . . . that is incompatible with sedentary work."  (*Id.* at 531.)  Finally, the claim file

includes an evaluation of video surveillance of Plaintiff that comports with the medical

evaluations of Drs. Parkerson and Gordon.  (*Id.* at 605.)  MetLife's extensive investigation and

persistent efforts to obtain complete and independent evaluations of Plaintiff's condition

provided MetLife with substantial evidence justifying its determination.

Plaintiff contends that her claim was not subject to a principled and fair review.  Instead,

she claims that MetLife's decision was the result of demonstrable bias based on selectively

chosen evidence.  (Pl.'s Mem. at 6.)  Plaintiff contends that MetLife failed to properly consider

her job description, and withheld Dr. Hendler's most recent records from the Independent

Physician Consultant.  Plaintiff further contends that by failing to credit Dr. Handler's medical

diagnosis and the Social Security Administration's award of Disability Insurance, MetLife has

abused its discretion.  (*Id.* at 6-8.)  However, none of these arguments individually, or

collectively, is sufficient to raise an issue of material fact to prevent MetLife from prevailing on

its motion for summary judgment.  I will address each argument in turn.

Plaintiff argues that MetLife's determination was unreasonable because it failed to

reconcile its decision with her job description, which included periodic "standing and lifting over

ten pounds as well as pushing and pulling carts and bending over."[4]  (Pl.'s Mem. at 7.)  The

---

[4] The portion of plaintiff's job description citing physical activity states: "These tasks are done once every 2-3 [weeks] . . . check insertion in mail room requires approximately 1 ½ to 1 ¾ hours of standing, gathering inserted checks, and manipulating letter trays which weigh approximately 10-15 pounds.  It also involves pushing/pulling a cart between Payroll Services Unit and the mail room.  Check Bundling/Distribution in the Payroll Unit requires 1 ½ to 2 hours of standing, sitting and some bending over.  It also requires manipulating letter trays and Federal Express packages as well as pushing/pulling a cart between the Payroll Services Unit and the Loading Dock."  (Defs.' Mem., Ex. A at 261.)  While these tasks are performed once every two to three weeks, The Plaintiff contends they are "significant" physical activities.  (Pl.'s Mem. at 7)

periodic physical requirements of Plaintiff's job are included in her claim file. (*See* Def.'s Mem., Ex. A at 261.)  While MetLife did not specifically reference these physical requirements in its decision, the Supreme Court has explicitly stated in the context of ERISA, "courts [may not] impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians evaluation."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Therefore, the absence of explanation is not alone sufficient to show demonstrable bias or abuse of discretion.

If MetLife had reached a conclusion which failed to comport with the physical requirements of Plaintiff's job, a justification for that discrepancy may have been necessary.  But in the instant case, the unreferenced physical requirements fall within the conclusions of the Independent Medical Examiner and the Independent Physician Consultant.  Dr. Parkerson concluded that Plaintiff could "return to work at her regular job without any specific restrictions."  (Def.'s Mem., Ex. A at 625.)  Furthermore he opined that "her limitations are either [sic] have a primary psychiatric basis . . . or possible [sic] a consciously self limiting condition."  (*Id.*)  Dr. Gordon concluded that there is "no physiological basis for her right sided body complaints" and "there is no objective reason why the claimant could not do at least light level work form the physical point of view."  (*Id.* at 531-32.)  These conclusions comport with the minimal physical requirements of Plaintiff's job.  Therefore, there is no reasonable basis upon which to claim that MetLife selectively ignored the details of Plaintiff's job to reach its conclusion that she was capable of returning to work.

Plaintiff also contends that Dr. Hendler's most recent medical records were unreasonably withheld from Dr. Gordon, the Independent Physician Consultant.  Plaintiff does not indicate

14

what new information the "office note" provides, or how its substance undermines the reasonableness of MetLife's conclusion.  Instead, Plaintiff points only to the failure to include it as evidence of an unreasonable process.  However, failing to forward these documents to Dr. Gordon was not unreasonable.  First, MetLife did not receive Dr. Hendler's most recent medical records until after it had forwarded the claim file to Dr. Gordon for review.  (*Id.* at 47.)  Second, the additional documents provided by Dr. Hendler are duplicative.  Dr. Hendler provided Plaintiff's most recent "office note" and a "medical profile" drafted by Plaintiff.  (*Id.* at 544.)  When Dr. Hendler's records were received by MetLife, Plaintiff's "medical profile" was already in the record and under review by Dr. Gordon.  (*Compare id.* at 545 *with id.* at 558.)  Dr. Hendler's most recent "office note" was the only piece of new information.  Plaintiff correctly notes that "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence."  *Black & Decker*, 538 U.S. at 834.  However, in the instant case, the process by which Dr. Gordon reviewed the record does not suggest any attempt to ignore relevant evidence supporting Plaintiff's Claim.  Dr. Gordon reviewed Plaintiff's complete medical history, which included Dr. Hendler's diagnoses and findings.  Furthermore, the "office note" was included in the record when MetLife conducted its final administrative review.  (Defs.' Mem. at 6.)

The failure to include the "office note" in the record before the Independent Physician Consultant amounts to a procedural irregularity, as Plaintiff does not indicate what the note would have added to the record substantively.  Such a minor procedural violation is not sufficient to undermine the reasonableness of MetLife's conclusions.  The Fourth Circuit has held that "it is well established that failure to technically comply with all of ERISA's procedural requirements does not automatically invalidate an otherwise sound denial of benefits . . .

15

Substantial compliance is typically sufficient." *Larson v. Old Dominion Freight Line, Inc.*, 277 Fed. Appx. 318, 321 (4th Cir. 2008).

Plaintiff next argues that MetLife failed to accord Dr. Hendler's diagnosis appropriate weight. However, MetLife's rejection of the opinion of Plaintiff's treating physician and decision to base its determination on the evaluation of two independent doctors is not sufficient to show an abuse of discretion. ERISA does not require plan administrators to accord special deference to the opinions of treating physicians. *See Black & Decker*, 538 U.S. 834.[5]  The Court in *Black & Decker* specifically rejected the "treating physician" rule applied in Social Security Disability Benefits Determinations. *Id.*  And while plan administrators may not arbitrarily ignore reliable evidence, MetLife has not done so here. Both Dr. Parkerson's and Dr. Gordon's reports are replete with references to and criticism of Dr. Hendler's records and diagnoses. (*See* Defs.' Mem., Ex. A at 620-23, 529-43.)  For example, Dr. Gordon detailed his perceived flaws in Plaintiff's medical treatment and explained the basis for his contrary medical judgment. (*Id.* at 529-43.)  It is not an abuse of discretion for an administrator to adopt the reasonably formed opinion of one doctor over another. *See Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 308 (4th Cir. 2004) ("[A]n administrator does not act unreasonably by denying benefits if the record contains 'conflicting medical reports.' ") (quoting *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999)).

Finally, Plaintiff contends that MetLife abused its discretion by failing to consider an award letter from the SSA, dated March 22, 2005, providing her with disability insurance

---

[5] The facts of *Nord* are similar to the instant case. Nord was an employee of Black and Decker who claimed he was unable to work due to chronic back pain. Nord submitted documentation from a treating physician attesting to his condition, but MetLife denied his claim for benefits. Black and Decker then had Nord undergo an independent examination by a neurologist who concluded that Nord could perform sedentary work with the aid of pain medication. In reliance on the independent medical examination, MetLife denied Nord's claim.

benefits.  However, this court will not consider the award letter in determining the reasonableness of MetLife's determination.  Under the abuse of discretion standard, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).  At the time of the appeal, MetLife had been informed by Plaintiff that she had received disability insurance benefits.  (*See* Defs.' Mem., Ex. A at 38, 41, 43.)  However, there is neither a copy of the award letter in the record, nor any other evidence to indicate that MetLife had received it, except for a specific request from MetLife to Plaintiff to produce a copy of the letter.  (*Id.* at 38.)  Plaintiff cannot now supplement the administrative record to include her award letter, nor insist that a reviewing court consider the text of the award letter in determining whether the administrator abused his discretion.  *See Bartel v. Sun Life Assur. Co. of Canada*, 536 F. Supp. 2d 623, 630-31 (D. Md. 2008) (citing *Bernstein v. Capital Care*, 70 F.3d 783, 788 (4th Cir. 1995)); *see also Stup v. UNUM Life Ins. Co.,* 390 F.3d 301, 307 n.3 (4th Cir. 2004) (holding that under ERISA a court's review of a plan administrator's determination for abuse of discretion is limited to the administrative record before the administrator at the time the determination was made).

MetLife concedes that it was generally aware that the SSA had awarded Plaintiff disability benefits; however, MetLife did not abuse its discretion by reaching a different determination than the SSA.  (*See*  Defs.' Mem., Ex. A at 38.)  SSA determinations of disability are based on different standards than those under independent long term disability plans like the MetLife Plan.  For example, SSA regulations provide that greater weight will be given to medical opinions from treating physicians.  *See Black & Decker Disability Plan,* 538 U.S. at 825

17

(citing to CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002)).  Under ERISA, there is no preference

for treating physicians' opinions.  (*Id.* at 834.)  Because of divergent standards, there is "no

obligation to weigh the agency's disability determination more favorably than other evidence."

*Gallagher*, 305 F.3d at 275 (citing *Elliot*, 190 F.3d at 607).

    Contrary to Plaintiff's claims, *Metropolitan v. Life Insurance Company v. Glenn,* is

inapposite to the instant case.  In *Glenn*, the Court found that "the record says little about

MetLife's efforts to assure accurate claims assessment."  *Metropolitan Life Insurance Company*

*v. Glenn*, 128 S.Ct. 2343, 2351 (2008).  The defendant considered favorable statements of a

treating physician while ignoring his unfavorable assessments.  *Glenn v. MetLife*, 461 F.3d 660,

669 (6th Cir. 2006).  The transferable skills analyst upon whom the defendant relied based his

conclusions on "technical information that seems to have been almost randomly selected from

his reports."  *Id.*  An independent medical examination was never requested.  And the defendant

reaped significant financial benefits from an award of SSA benefits and then failed to consider

the award in its own determination.  These factors indicated the inherent unreasonableness of the

defendants' decision making process in *Glenn*.  In the instant case, MetLife engaged an

independent medical examiner and an independent physical consultant.  Rather than ignore the

findings of the treating physician, Drs. Parkerson and Gordon considered his diagnosis in its

totality and justified their decision in light of his conclusions.

    Plaintiff's reliance on *Groski v. ITT Long Term Disability Plan for Salaried Employees* is

equally misplaced.  In *Groski*, the defendant was found to have abused its discretion because it

relied exclusively on the unreasoned opinion of a physician who had never examined Plaintiff.

The decision was unreasonable because the physician failed to explain his conclusion that there

were "no objective findings" to support Plaintiff's complaints.  *Groski v. ITT Long Term Disability Plan for Salaried Employees*, 314 Fed.Appx. 540, 544 (4th Cir. 2008).  With respect to the doctor's conclusions, the court noted that

> he never revealed why he rejected the view of the other doctors that dislodged surgical hardware was irritating surrounding nerve tissue, resulting in debilitating pain for Gorski. In fact, he never discussed at all the June 2000 CT scan and flexion and extension films that several doctors reported as depicting the dislodged hardware and resulting nerve root impingement and as supporting Gorski's claims regarding the extent of her pain.

*Id.* at 547.  The unreasonableness of the defendant's decision was not refusing to credit the treating physician, but in adopting an unreasoned and unexplained conclusory opinion in the face of contrary objective evidence.  In the instant case, Dr. Parkerson physically examined Plaintiff and reviewed her medical history.  In his report he acknowledged Dr. Hendler's physical diagnosis and agreed with it.  But he went on to explain his contrary assessment that the objective physical irregularities were not precluding her from returning to her job.  Similarly, Dr. Gordon reviewed Plaintiff's claim file, addressing line by line the assessments of Plaintiff's treating physicians over the course of five years.  Contrary to the physician relied upon in *Groski*, the physicians relied upon in the instant case reached their conclusions after principled, reasoned approaches and justified their disagreements with Plaintiff's treating physician.

MetLife conducted a full, principled and reasonable evaluation of Plaintiff's claim.  For the foregoing reasons, I grant Defendants' motion for summary judgment as to Plaintiff's claim. A separate order to that effect is being entered herewith.

September 30 , 2009

_/s/_
J. Frederick Motz
United States District Judge